UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:14-CR-880-1 |
| | § | |
| RICARDO JUAREZ-OLMEDO | § | |

## ORDER DENYING MOTION TO SUPPRESS

Before the Court is Defendant's Motion to Suppress Evidence (D.E. 12) and the Government's Response (D.E. 14).  The Court OVERRULED the Government's objection to the timeliness of the motion and conducted an evidentiary hearing on the motion on February 2, 2015.  For the reasons set out below, the motion is DENIED.

## FACTS

Border Patrol Agent Noe Hernandez testified that, on September 1, 2014, as he was heading home after his shift, he observed a white extended cab Silverado pickup truck come to an abrupt stop at a highway rest area.  An individual later identified as the Defendant, Ricardo Juarez-Olmedo, emerged from the brush, jumped a barbed-wire fence, and ran to the truck.  The truck then quickly left in a southbound direction.

Agent Hernandez, based on his experience working for the Border Patrol, recognized this scenario as consistent with the manner in which guides who smuggle aliens around border patrol checkpoints get picked up after their job is done and are returned to their more southern starting point.  Using his Border Patrol radio, Agent Hernandez called in what he had observed while he followed the truck, updating its location as it traveled.

Border Patrol Agent Horacio Espinoza, responding to Agent Hernandez's call, got in a marked Border Patrol unit and caught up to the truck, at which point Agent Hernandez left the scene. Agent Espinoza drove up beside the truck to try to get the driver's and passengers' attention, but was unsuccessful. He testified that, in his seven years of experience in this line of work, those who are involved in alien smuggling try to ignore Border Patrol efforts to get their attention.

Eventually, he pulled the truck over and conducted an immigration inspection. When Agent Espinoza asked back seat passenger Juarez-Olmedo whether he was a United States citizen, Juarez-Olmedo met the question with a blank stare. He did not have any identification on him. Agent Espinoza asked the driver in Spanish to shut off the engine and asked the occupants to get out. They complied. Upon further questioning, Juarez-Olmedo said, in Spanish, that he was from Mexico. Agent Espinoza observed that Juarez-Olmedo's shoes and the bottom portion of his pants were very dirty.

Concluding that Juarez-Olmedo was not in the country legally and that the other adults in the car were assisting him, Agent Espinoza called in additional agents from the Falfurrias Checkpoint to assist in taking the driver, a female passenger, and Juarez-Olmedo into custody, and tending to the five-year-old child who was with them. All of the events took place within 4 to 7 miles of the Falfurrias Checkpoint. They were taken to the Falfurrias Checkpoint and were read their Miranda rights. Juarez-Olmedo waived his rights and made an inculpatory statement, which he now seeks to suppress. Juarez-Olmedo is charged with one count of transporting aliens who are in the United States in violation of the law. D.E. 6.

Juarez-Olmedo did not offer any witnesses to controvert the Government's case. Instead, counsel relied on the fact that there were a few homes and businesses in the area, implying that Juarez-Olmedo could have had a legitimate reason to be in the area—unrelated to alien smuggling—that could explain the abrupt pickup and negate reasonable suspicion. Counsel also cross-examined Agent Hernandez, suggesting that his alien-smuggling suspicions were not genuinely held if he did not call into the Falfurrias Checkpoint with concerns that there might be a group of aliens making their way into the interior of Texas who would have been related to Juarez-Olmedo.

## DISCUSSION

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Because Defendant was seized without a warrant, the Government bears the burden of showing, by a preponderance of evidence, that the seizure was permissible under one of the exceptions to the Fourth Amendment's warrant requirement. *See United States v. Jeffers*, 342 U.S. 48, 51 (1951); *United States v. Guerrero-Barajas*, 240 F.3d 428, 432 (5th Cir. 2001).

Border Patrol agents may stop vehicles if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that the vehicle contains illegal aliens or those involved in smuggling illegal aliens past border patrol checkpoints. *See United States v. Brignoni-Ponce*, 422 U.S. 873, 884

(1975). Agents do not need a warrant to interrogate persons believed to be aliens as to their right to be in this country. 8 U.S.C. § 1357(a)(1).

Included in evaluating the agents' thought processes is evidence of such things as the known characteristics of the geographic area, patterns of illegal behavior, proximity of the area to the border, and the behavior of occupants of a vehicle suspected to be involved in criminal activity. *United States v. Inocencio*, 40 F.3d 716, 722 (5th Cir. 1994); *United States v. Aldaco*, 168 F.3d 148, 151-52 (1999) (allowing consideration of a road's reputation as a smuggling route).

The Court FINDS that, under the totality of the circumstances, Agents Hernandez and Espinoza had reasonable suspicion that Defendant Juarez-Olmedo had violated the immigration laws based on his conduct prior to the traffic stop and immigration inspection. Consequently, the Government has sustained its burden of proof and the Agents did not violate Juarez-Olmedo's Fourth Amendment rights. The motion to suppress is DENIED.

ORDERED this 3rd day of February, 2015.

                                                    _____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE